UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

Sharon M. Knope,

                                 Plaintiff,

      v.

Jefferson B. Sessions, III, *in his official capacity*
  *as Attorney General, United States*
  *Department of Justice*,

                                 Defendant.

**Decision and Order**

16-CV-809V

───────────────────────────────

## I.    INTRODUCTION

Plaintiff Sharon Knope ("Knope") worked for approximately 20 years as an administrative staffer with the United States Attorney's Office for the Western District of New York (the "Employer"). Beginning in 2012, according to Knope, Employer began changing her job duties, berating her when confusion arose about her job duties, and refusing to accommodate her medical conditions. When Knope filed internal agency complaints alleging discrimination, Employer allegedly retaliated by denying her certain leave applications and ultimately terminating her on April 4, 2016. Knope filed suit on October 11, 2016, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. Knope's current complaint contains details of a number of alleged acts of discrimination and retaliation.

Knope now seeks permission to amend her complaint to add details of other alleged acts of retaliation, acts related to interruptions in her medical coverage and her notices about retirement benefits. Knope filed a non-dispositive[1] motion to amend on July 17, 2017 under Rule 15(a) of the Federal Rules of Civil Procedure. (Dkt. No. 21.) Employer opposes the motion for several reasons, including that Knope did not exhaust administrative remedies for the proposed amendments and that the proposed amendments do not set forth legally cognizable allegations. The proposed amendments, in Employer's view, thus are futile.

The Hon. Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 7.) The Court held oral argument on August 29, 2017. For the reasons below, the Court grants the motion.

## II. BACKGROUND

This case concerns allegations of a vicious circle of negative performance appraisals, denials of disability accommodations, and reprisals that occurred between Knope and Employer over a series of several years. According to the current complaint, Knope began working for Employer in 1996 as a Victim Witness Coordinator. "In this position Ms. Knope managed the district's victim witness program; in that she handled all the victim cases for the Buffalo Office, notified victims of case status and their    rights as victims, accompanied victims to court proceedings and explained the criminal justice process, and provided referrals to victim assistance agencies as needed, handled witness management for trials, including witness travel arrangements for out of town witnesses,

---

[1] Motions to amend pleadings generally are considered non-dispositive. *See, e.g., Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); *Rubin v. Valicenti Advisory Servs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007).

assisting any other local witnesses that may need assistance in getting to court, answering their questions about the court process." (Dkt. No. 17 at 4–5.) In Knope's view, she received good performance reviews until 2015; Employer took no position on this assertion in its answer. Since 2005, Knope worked through diagnoses of Celiac disease, irritable bowel syndrome, and frequent kidney stones. Knope's conditions required occasional medical leave and medical treatments; the current complaint implies that she might have needed reasonable accommodations (*id.* at 5 ¶ 28) but does not specify any accommodations actually requested and provided.

Knope has alleged that the problems leading to this litigation began in June 2012. Around that time, according to Knope, Employer began questioning both the quality of Knope's work and the quantity of her responsibilities. By 2013, Employer placed Knope under increased scrutiny while giving her additional responsibilities related to attorney support, grand jury paperwork, and 24-hour call. Knope protested to Employer that the additional responsibilities reached outside of her job description and that the increased scrutiny increased her stress, which in turn exacerbated her medical conditions. Knope also has cited a few examples of a work environment that became increasingly hostile to her after 2013. One example was an incident in October 2014 in which an apparent miscommunication about trial support responsibilities led to aggressive verbal abuse without reprisal. Another example was an incident in June 2015 in which a kidney stone attack and emergency surgery left her unable to be on 24-hour call for several days. According to Knope, Employer nonetheless held Knope responsible for the lapse in call coverage, refused the reasonable accommodation of taking her off of call, and gave her a negative performance review at the end of the month. The allegation of the negative performance review, though just an allegation at this

3

time, is notable because Knope "was bluntly told it was a result of her request for a reasonable accommodation." (*Id.* at 9.)

The negative performance review of June 2015 set in motion a series of events that culminated in Knope's termination. In August 2015, Knope filed an internal agency complaint of unlawful discrimination based on age, sex, and disability. (*Id.* at 3.) Knope described the complaint as "a complaint of discrimination based on sex and disability and reprisal (retaliation)" (*id.* at 3 ¶ 14) though Employer made no admission in its answer about the content of the complaint. (Dkt. No. 18 at 4 ¶ 14.) While the agency complaint was pending, Employer allegedly ordered Knope back to work "while she was on legitimate leave." (*Id.* at 10.) A few months later, on March 1, 2016, Knope filed a second internal agency complaint called a Complaint of Reprisal. (Dkt. No. 17 at 4 ¶ 18.) Employer has acknowledged the title of the document but has made no admission about its contents. (Dkt. No. 18 at 5 ¶ 18.) According to Knope, Employer soon began removal proceedings against her. Employer ultimately terminated Knope as of April 4, 2016.

Knope began this litigation by filing her original summons and complaint on October 11, 2016. At the Court's prompting (Dkt. No. 13), Knope filed an amended complaint—the current operative complaint—on April 27, 2017 to reflect the change in Attorney General and to adjust the caption accordingly. The amended complaint contains seven claims. In the first three claims, Knope accuses Employer of failure to provide a reasonable accommodation, a hostile work environment, and retaliation, all in violation of the ADA. In the next three claims, Knope accuses Employer of sex-based discrimination, a hostile work environment, and retaliation, all in violation of Title VII. In the seventh claim, Knope accuses Employer of age-based discrimination in

4

violation of the ADEA. Employer answered the amended complaint on May 10, 2017. (Dkt. No. 18.)

Knope filed the pending motion on July 17, 2017 and seeks permission to file a second amended complaint. The redline copy of the proposed second amended complaint (Dkt. No. 21-4) reveals that many of Knope's proposed changes are cosmetic. The big proposed change concerns the addition of a factual allegation about health insurance and retirement benefits. (*Id.* at 14–16.) Knope wants to allege that Employer failed to tell her about a notice, placed in her online personnel folder on April 16, 2016, that she would lose health insurance as of May 16, 2016. Knope has not clarified whether her online personnel folder had been set up to send email notices directly to her, or whether perhaps any email notices had been going to a work email address that she no longer could access. In any event, Knope wants to allege that she did not know about the termination of her health insurance until she received a notice of cancellation on May 17, 2016. A second, allegedly improper, cancellation of medical coverage occurred in February 2017. Similarly, Knope wants to allege failures by Employer to give her certain information about her status in the Federal Employee Retirement System ("FERS"). Knope believes that Employer's failures to provide important notices constituted additional acts of retaliation after her termination. The redline copy of the proposed second amended complaint explicitly places the post-termination allegations under the sixth claim for Title VII retaliation. (*Id.* at 21–22.) Despite some initial confusion about whether Knope wanted to add new claims (*compare* Dkt. No. 21-2 at 1 *with* Dkt. No. 25 at 1), she insists that she "has offered facts that show continuation of actions on the part of the Defendant that relate to an already pled claim of

retaliation. In particular the Plaintiff notes that the issue of failure to provide requisite documents to health care providers has caused her to lose her health care coverage. This loss seriously interfered with the Plaintiff's health, caused her unnecessary stress, financial loss in terms of cost of continuing health care, and left her without final record of her federal employee benefits. These are materially adverse acts." (Dkt. No. 25 at 2.) To the extent that Employer is raising any issue about exhaustion of administrative remedies, Knope counters that she had no internal complaint process to exhaust once she lost her job.

Employer opposes the filing of a second amended complaint and the addition of the post-termination allegations. Employer argues first that Knope did not exhaust administrative remedies with respect to post-termination retaliation. Knope filed internal agency complaints regarding age, sex, and disability discrimination, but not about benefits or notices concerning those benefits. Secondly, Employer argues that the proposed allegations about post-termination retaliation do not set forth an adverse action that the Second Circuit recognizes. The Second Circuit, according to Employer, recognizes post-termination retaliation only when it affects the ability to secure future employment. Finally, Employer argues that Knope has failed to allege retaliatory intent and has failed to identify who had the responsibility for providing notices about health insurance and retirement benefits.

## III. DISCUSSION

### A. Motions to Amend Generally

Under the circumstances here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so

6

requires." Fed. R. Civ. P. 15(a)(2). Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citation omitted). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted).

Here, the Court sees no preliminary barriers to amendment. The case still is new enough that discovery barely has begun and would be in its earliest stages. Prejudice thus seems highly unlikely. Also, Knope's major proposed amendment does not appear to raise any possibility of bad faith, and Employer has not suggested otherwise. *Cf., e.g., Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) ("Here, at this early stage of the case, there is no concern about delay, bad faith, or prejudice. The critical issue is whether the [amendment] would be futile."); *Peters v. City of Buffalo*, 848 F. Supp. 2d 378, 382 (W.D.N.Y. 2012) ("Defendants have provided no grounds on which they would be prejudiced. Further, this Court finds that at this early stage of the litigation there is no undue prejudice to defendants that would preclude amendment of the complaint."). Consequently, the only barrier to amendment that the Court will need to review further is futility. More specifically, the Court will need to review Employer's arguments about administrative prerequisites and legal insufficiency with respect to post-termination retaliation. The Court agrees with Knope that her proposed new allegations potentially buttress the sixth claim in the amended complaint without adding any new claims. *Cf. Yankelevitz v. Cornell Univ.*, No. 95 CIV. 4593 (PKL), 1996 WL 447749, at *4 (S.D.N.Y. Aug. 7,

1996), *on reconsideration in part on other grounds*, No. 95 CIV. 4593 PKL, 1997 WL 115651 (S.D.N.Y. Mar. 14, 1997). Nonetheless, granting leave to amend would serve no purpose if, as a matter of law, the proposed information could not support a theory of retaliation and could not be used at trial.

### B. Title VII and Post-Termination Retaliation

The Court will review Knope's proposed amendment only within the context of Title VII, since Knope proposes placing the amendment within her sixth claim for retaliation under that statute. Title VII applies to federal government employment by way of 42 U.S.C. § 2000e-16. The extension to federal government employment includes the protection against retaliation set forth under 42 U.S.C. § 2000e-3. As with private-sector employment, federal employees must exhaust internal administrative remedies before proceeding to civil litigation. *See Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001) (citation omitted). The process for pursuing internal administrative remedies is set forth at 29 C.F.R. § 1614.105(a). The need to pursue internal administrative remedies is a statutory prerequisite and not a jurisdictional one, meaning that it is subject to waiver, estoppel, and equitable tolling. *See, e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *accord Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999) (citations omitted). One instance when waiver can be appropriate is when a claim in a civil action is "reasonably related" to claims pursued through internal administrative remedies. "A claim is considered reasonably related if the conduct complained of would fall within the scope of the [internal agency] investigation which can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001) (internal quotation marks

and citation omitted). "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [internal agency] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks and citations omitted). The rationale behind the "reasonably related" exception is practical: Agencies should have a chance to investigate complaints internally in the first instance, and as long as they have that chance, courts will avoid hypertechnical analysis of labels. *Cf. Williams v. New York City Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) (vacating a dismissal for failure to exhaust administrative remedies, where the plaintiff's "specific factual allegations put the EEOC on notice that, in addition to a retaliation claim, a gender discrimination claim may also exist").

Here, the absence of Knope's internal complaints from the record hampers the Court's ability to apply the "reasonably related" exception. The Court simply does not have a copy of Knope's internal complaints or of any final adjudication of them. The record contains some descriptions of the internal complaints, and the parties more or less do not dispute those descriptions. Employer also has acknowledged that the title of the second internal agency complaint was "Complaint of Reprisal," which at least suggests that the document contained some kind of allegation about retaliation. The above information, however, does not suffice for a careful factual consideration of what Employer had a chance to investigate in the first instance.

Nonetheless, another factor now comes into play—the timing of Knope's termination and the alleged additional acts of retaliation. Knope filed her first internal agency complaint on August 10, 2015 and her second on March 1, 2016. Employer fired Knope a month later, on

9

April 4, 2016. The temporal proximity between the filing of a document called "Complaint of Reprisal" and the formal termination gives at least a little credence to Knope's contention that the two events are related. That temporal proximity is enough, at this early stage of the case, to place Knope under the principle that denial of employment in retaliation for complaints about other prior discrimination makes both claims of discrimination directly related. *See Kirkland v. Buffalo Bd. of Ed.*, 622 F.2d 1066, 1068 (2d Cir. 1980); *accord Patel v. Lutheran Med. Ctr., Inc.*, 753 F. Supp. 1070, 1072 (E.D.N.Y. 1990) (citing *Kirkland*); *see also Legnani v. Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139, 141 (2d Cir. 2005) ("When Legnani filed her 1995 action, she had not yet been discharged from Alitalia. She could not have brought the retaliatory discharge action at that time and, accordingly, she was free to bring her retaliatory discharge claim in this subsequent action."). Additionally, the information that Knope wants to add in a second amended complaint is not information that was available while she was employed and had access to internal agency procedures. The information emerged after Knope's termination, and the Court is not aware of any rule that a terminated employee must return to the former employer to ask for access to that employer's internal procedures. *See Owens v. New York City Hous. Auth.*, 934 F.2d 405, 410–11 (2d Cir. 1991) ("We have previously held that when an employee brings a claim alleging retaliation for filing a complaint with the EEOC, the retaliation claim is deemed 'reasonably related' to the original EEOC filing. In such a case, the allegations of retaliation are seen as stemming from the earlier discriminatory incident, including plaintiff's attempt to vindicate her federal rights against discrimination. The retaliation claim may thus be heard notwithstanding plaintiff's failure to state it in a separate complaint filed with the EEOC."); *Ziemba v. Slater*, 36 F. Supp. 2d 81, 86 (D.

10

Conn. 1999) (finding a "close temporal proximity" where plaintiff was terminated approximately eight months after filing an internal agency appeal); *see also Prathap v. De Paul Univ.*, No. 02 C 6217, 2003 U.S. Dist. LEXIS 8775, at *5 (N.D. Ill. May 27, 2003) ("[A] separate administrative charge is not a prerequisite to a suit complaining about retaliation for filing the first charge.") (citation omitted). Knope's proposed amendment thus does not face a requirement pertaining to administrative remedies.

Employer's principal case concerning exhaustion of administrative remedies does not change the above analysis. In *Malcolm v. Honeoye Falls Lima Cent. Sch. Dist*, 777 F. Supp. 2d 484, (W.D.N.Y. 2011), *aff'd sub nom. Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*, 483 F. App'x 660 (2d Cir. 2012) (summary order), the employer fulfilled its duties to provide the plaintiff with notice about termination of health insurance coverage. The plaintiff's case fell into trouble because her allegations about discontinuation of coverage were more properly directed to the administrator of the benefits plan in question, and that administrator was never named in the suit. To the extent that exhaustion of administrative remedies became an issue, *Malcolm* relied on *Hawkins v. Wegmans Food Mkt., Inc.*, 224 F. App'x 104 (2d Cir. 2007) (summary order), a case in which all of the events that should have been raised in internal agency complaints occurred before the plaintiff's termination. *See Hawkins v. Wegmans Food Markets, Inc.*, No. 05-CV-6458 CJS, 2006 WL 4070304, at *3 (W.D.N.Y. Nov. 28, 2006) (EEOC complaint filed after events leading to termination). Neither *Malcolm* nor *Hawkins* addressed how administrative remedies could be exhausted after termination. Those cases thus are distinguishable.

11

### C. Failure to State a Claim

That Knope's proposed new allegations are excused from the administrative remedies requirement does not end the Court's analysis. Even if the proposed new allegations are not legally *barred*, are they legally *cognizable*? "Title VII's definition of 'employee' . . . lacks any temporal qualifier and is consistent with either current or past employment." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 342 (1997). Arguments in favor of covering former employees "carry persuasive force given their coherence and their consistency with a primary purpose of antiretaliation provisions: Maintaining unfettered access to statutory remedial mechanisms." *Id.* at 346 (citations omitted); *see also Pantchenko v. C. B. Dolge Co.*, 581 F.2d 1052, 1055 (2d Cir. 1978) (noting "the statute's purpose, which is to furnish a remedy against an employer's use of discrimination in connection with a prospective, present or past employment relationship to cause harm to another."). Since Title VII's retaliation protection covers former employees, the next question becomes what kind of retaliation former employees can allege. Any cognizable retaliation has to take the form of a material adverse action. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation and editorial marks and citations omitted).

Employer has given the Court examples of how the above principles have been applied to future job prospects. *See, e.g., Thompson v. Morris Heights Health Ctr.*, No. 09 CIV. 7239 PAE THK, 2012 WL 1145964 (S.D.N.Y. Apr. 6, 2012); *Giarrizzo v. Holder*, No. 07-CV-0801 MAD/GHL,

12

2011 WL 4964945 (N.D.N.Y. Oct. 19, 2011). Nothing in those cases, however, limits the above principles *only* to future job prospects. The one possible exception is *Stathatos v. Gala Res., LLC*, No. 06 CIV. 13138 RLC, 2010 WL 2024967 (S.D.N.Y. May 21, 2010), which in turn cited *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) for the proposition that "the ADEA, like Title VII, protects individuals from actions injurious to *current* employment or the ability to *secure future* employment" (italics in original). The promise to pay health insurance rescinded in *Stathatos*, though, does not seem to resemble the kind of established benefit presented here. Additionally, *Wanamaker* dealt with "the loss of an office and phone by an employee who has already been informed of a termination decision, and is waiting out his numbered days on the payroll searching for a new job." 108 F.3d at 466–67. That condition again falls short of the kind of alleged established benefit and continuing obligation presented in this case, meaning that the parties here should not read too much into *Wanamaker*'s italics. What matters here is whether interruptions in established benefits that impose actual costs can be considered materially adverse actions. For various types of established benefits, some courts have said yes. *Cf., e.g., Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 522 (5th Cir. 2001) (denial of unpaid leave to a university professor); *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1245 (8th Cir. 1998) (denial of vacation days to take federal holidays off work); *Miller v. Brennan*, No. 1:15-CV-0079-CC, 2016 WL 1237851, at *2 (N.D. Ga. Mar. 30, 2016) ("However, several courts have concluded that forcing an employee to take leave without pay may constitute an adverse employment action because it directly affects the employee's compensation.") (collecting cases); *Dicks-Kee v. New Jersey Judiciary*, No. CIV. 12-6620 JBS/JS, 2014 WL 7339458, at *11 (D.N.J. Dec. 23, 2014) (granting

13

defendant's motion for summary judgment for other reasons but noting that "[t]hree months' sick leave payment is not an insubstantial sum, and withholding of reimbursement, even four years after an incident, may still cause a financial hardship serious enough to deter a reasonable employee from complaining about an employer's discriminatory practices"); *Krishnapillai v. Donahoe*, No. 09-CV-1022 NGG SMG, 2013 WL 5423724, at *13 (E.D.N.Y. Sept. 26, 2013) (denial of paid sick time or administrative leave); *Diggs v. Potter*, 700 F. Supp. 2d 20, 43 (D.D.C. 2010) (denial of sick leave costing plaintiff three hours of pay); *Pfeiffer v. Lewis County*, 308 F. Supp. 2d 88, 109 (N.D.N.Y. 2004) (denial of access to a sick leave bank). These latter cases are more consistent with the mandate from *Robinson* to allow "unfettered access to statutory remedial mechanisms," and the Court will apply them here. Knope wants to allege that Employer failed to give her notice, after her termination, that her health insurance would expire in about a month. Knope implies some kind of bad faith in her proposed allegation that Employer eventually provided notice when prodded by her Worker's Compensation attorney. (Dkt. No. 21-4 at 14–15.) Even then, according to Knope, the notice was incomplete, and a second health insurance termination had to be corrected in February 2017. "Ms. Knope subsequently learned that USAO never submitted her continuation of coverage paperwork to the National Finance Center as they were required to do." (*Id.* at 15.) Knope wants to allege further that Employer never provided FERS benefit statements when it was in a position to do so. Besides certain benefits themselves, Knope asserts that Employer's administrative failures have caused her certain material costs that she otherwise would have avoided. *Compare* Dkt. No. 21-4 at 15 ("As a result of USAO WDNY's failure to provide Ms. Knope the information on the cost of continuation of coverage, she has now

14

incurred unnecessary medical insurance costs that she cannot afford.") *with Gaidasz v. Genesee Valley Bd. of Co-op. Educ. Sys. (Boces)*, 791 F. Supp. 2d 332, 337 (W.D.N.Y. 2011) ("It is undisputed that plaintiff's pay, benefits and position were unaffected by [certain counseling memoranda].") During discovery, Knope will have to substantiate exactly what Employer's obligations were, whether any failure to perform those obligations had a connection to protected activity, and what material costs Employer imposed on her as a result. For now, though, Knope wants to plead a material loss of benefits stemming directly from retaliatory conduct, and that would be enough to survive Rule 12 motion practice. The Court thus concludes that the amendments in the proposed second amended complaint would not be futile.

Overall, then, Knope's proposed amendments do not demonstrate undue delay, bad faith, undue prejudice to Employer, or futility. Subject to developments during discovery and dispositive motions down the road, Knope can proceed for now with the proposed second amended complaint.

## IV. CONCLUSION

For all of the above reasons, the Court grants Knope's motion to amend (Dkt. No. 21). Knope will file the second amended complaint on or before September 29, 2017. Rules 4 and 15(a)(3) will govern service and the time to respond.

SO ORDERED.

           __/s *Hugh B. Scott*_____
           Honorable Hugh B. Scott
           United States Magistrate Judge

DATED: September 20, 2017